26, CROSS MATCH TECH v. ITC. Mr. Grant, whenever you're ready. Your Honor, I'd like to reserve three minutes of my time for rebuttal. May it please the Court, my name is Max Grant, and I represent CROSS MATCH TECHNOLOGY's If I could respectfully invite the Court's attention to pages 94 and 95 of the Joint Appendix. This is the section of the ALJ's initial determination concerning claim construction of the term active. And I think if the Court looks at what is marked as page 95, which in the first full paragraph, the ALJ construes the term capture as acquiring, by the scanner, for processing and storage. In the second full paragraph on that same page in the claim construction section of his order, the ALJ states in his order, in addition, the unasserted claims of the 562 patent similarly make clear that capture is something that takes place prior to the image being forwarded to the computer. It is the importation of this limitation into the claim language that is legal error. The confusion, in part, arises from the ALJ's importation of this claim limitation, while at the same time adopting the words of the claim construction of CROSS MATCH proposed, while rejecting the claim construction that substantively, was whether capture had to take place prior to the image being forwarded to the computer. Well, the claim language that you proposed actually has, as you start out, the phrase by the scanner right in the claim language. So how is that not consistent with your own proposal? Sure, Your Honor. The reason is the claim construction is acquiring, comma, by the scanner, comma. So it's the acquiring of the image that's required before processing and storage. And I think if the court looks at the claim language of the claims as well as the specification, it'll see that that makes sense. So, for example, there are six sub-elements of Claim 1. It's the first two that must be done expressly by the scanner, initiating camera operation and then scanning. I'm still not, this is a basic grammar issue. Acquiring, comma, by the scanner. So who else is acquiring it if it's not the scanner? The scanner is acquiring it, Your Honor, but acquiring it is steps A and B of Claim 1. What the claim then goes on to describe is processing the scanned image to determine print quality and detecting prints. It is those steps that the patent expressly teaches can be done as part of what's called the print capture manager. And the patent teaches that that functionality can be distributed on a general purpose computer that's attached. In looking at the unasserted claims of the ALJ, unasserted claims of the patent, the ALJ did the right thing but came to the wrong conclusion. So, for example, if you look at Claim 4, the first element of Claim 4, which is G, states capturing the scanned image to obtain a captured image. And what the court's construction does here, Your Honor, is conflates obtaining a scanned image with capturing an image. Now, it may be the case that that sounds like semantics, but it's a big difference to people that work in this field of biometric identification. It's no different than the difference between having an image appear on your computer and then making the conscious step to write it to a hard drive, I would call that analysis. One of the difficulties I'm having, and I think this is what Judge O'Malley was alluding to, is that you propose, you're suggesting here, I think, that there's a different construction that applies to the 344 patent and to the 562 patent, correct? No, I don't believe so, Your Honor. We agree that the same construction applies. The difference between what the 344 patent claims and what the 562 patent claims is whether these quality checks are done before capture. In the 344 patent, Step A is scanning and Step B is capturing and what that means is in that claim system, it's a rote process, scanning and capturing. The entirety of Claim 1 of the 562 could be inserted in between Element A of the 344 and Element B of the 344. So, what this patent teaches is when you put your fingerprint on these scanners, which are precisely the scanners, for example, if someone's traveling overseas and comes through customs, when you stand in line at customs and there's that fingerprint scanner, that's our scanner. When you put your fingers on that scanner, what's happening is the control functionality of the print capture manager is evaluating what's on that platen of the scanner to determine if the quality is good enough to actually take it and then subsequently evaluate it. So, that scanner is taking images, obtaining scanned images of those prints that are on the glass several times a second and if you, for example, put three fingers down instead of four, it's not going to capture. If you put four fingers down but don't press them hard enough so that there's not enough pixels on the platen, it won't capture it and only when it has an image that's been evaluated for the number of prints and the print quality are the steps of Claim 1 satisfied. What else in the spec? There's a column, I think, there's a section in the spec you can call it up because it seems other portions of the spec clearly are related to the scanner and not the computer. So, is this your predominant view of where the spec calls out the computer? Your Honor, I think it would also be found, if you look in the joint appendix of pages, which is the patent that you're referring to, figures 1A and 1B, which is 308 in the appendix, as well as figure 3A, which is on page 310 of the appendix. In both those, you'll see, for example, in figure 1A, it mentions the scanner as being figure 104. And then in figure 1B, it shows that the prints capture manager is a component of the scanner. Now, this makes sense. Right. Does that help you? It does help me, Your Honor, because I think the analogy is this. It's not uncommon for control functionality to be moved. So, in a case where we have these scanners and they're used, it's up to the designer to determine where to put that control functionality. So, for example, in an automobile, if we had a computer that was controlling the fuel injection of the engine, if a car designer decided to say, you know what, instead of having that chip physically placed on the engine, we're going to have that control functionality executed by a general processor that's in the trunk with everything else, the processing that relates to the fuel injection is still part of the engine. And the fact that it's done elsewhere doesn't change that. And, indeed, that's expressly what the patent teaches. I think your analogy supports your argument. But I think when you agree to the claim construction that the court adopted, and, in fact, you advanced it, I think that was probably your undoing. Well, it certainly undoes what you're arguing today. Because when you go back and you're asking us to read this and rearrange the construction for grammatical purposes, but the construction was acquiring, comma, by the scanner, for processing and storage. And it seems to me that that pretty much clearly says that everything is taking place in the scanner. I respectfully disagree, Your Honor. It says acquiring, comma, by the scanner, comma, for processing and storage. And as it's set forth in the claim, that fits snugly. Elements A and B is the scanner acquiring the actual scanned image. And then there are these quality processing steps. And, indeed, that's precisely what this court found in the inter-vet case. In the inter-vet case, a claim construction, the verbiage of a claim construction was adopted by a court. The party did not complain of it. Then, in what this In infringement, this court found that the district court inserted what they called a limitation that was a manufacturing requirement. And in so inserting that additional limitation, even though the words of the claim construction were correct, this court ruled that that was erroneous. And to the extent that district court's application of its claim construction required that additional limitation, it was erroneous. And this court remanded to review infringement in light of a proper claim construction. Well, how do you square it with Tassara, though? I mean, Tassara seems to suggest a different outcome, right? Well, I don't know precisely how to respond to that, Your Honor. To me, the inter-vet case is square on point in controlling. The inter-vet case specifically says that if you have a claim construction, in applying that in the course of infringement, the court adds an additional limitation that's not as part of the construction. That's a legal issue. And in that case, even though it was called application of a claim construction, which seems perfectly appropriate, the court in that case changed the legal meaning of the scope of the claim. In conducting the claim construction, it remanded the question for a determination consistent with the claim construction articulated herein, even though this court didn't change the wording of that claim construction. And that's four square with Katz. In the Katz case, the court said, although the parties do not disagree with the court's construction of the term, they disagree about the meaning of the court's construction. Now, in that case, the court remanded it on claim construction because there was insufficient briefing. That's far from the case here, Your Honor. In this case, in our petition to the Court of Appeals, it sets forth the meaning of claim construction in great detail. And in our reply brief on pages four and five, it sets forth in bullet points some examples of the places in our petition for review where that was done as a matter of claim construction. And I would submit, Your Honor, that reviewing the briefing before the petition will be enlightening because the ITC staff responded to those arguments, not with waiver arguments. They responded in a section that was entitled, The Judge's Construction of Capture. And that's on page A-102-926 of the Joint Appendix. And they said that the construction should be affirmed and they argued that both the construction and the interpretation were legally correct. Similarly, Supremum, in opposing that portion of our petition for review, argued all claim construction arguments, that the interpretation of capture was foreclosed by the claim construction, that there was a disavowal in prosecution. That's a claim construction argument. And that read as a whole, the patent doesn't cover it. We disagree, Your Honor. We think that the patent and the specification make clear that you can't have a scanned object and equate that with a captured image. Those are two different things. And if you look at, for example... Could you address just briefly what you believe is the appropriate standard of review here? Absolutely, Your Honor. It's de novo review, because this is an issue of claim construction, just as was the case in the InterVet case. And simply because it was termed claim application of the claim, that doesn't change the substance of the arguments that were applied. They were fundamentally claim construction arguments. And Your Honor, I would submit that in that petition for review, you will see not only that we presented purely claim construction arguments, that the IPC staff responded in a section called, Response done to the Judge's claim construction, that Supreme argued in opposition, pure claim construction arguments. Now this was an issue that was clear in the pre-hearing briefs, in the Court's Order 23, which was like an interrogatory that Judge Lucker had issued to the parties, in the post-hearing briefing, and in the commission briefing. Throughout, it was treated as an issue of claim construction and a legal issue. And if you look at page 60 of that initial determination, Your Honor, you'll see where the confusion arose. The Court added and imported a limitation that wasn't a claim construction, and isn't called for by either the claim or the specification. Can I ask one question? You have in your brief, you say that this appeal was a protective appeal. Does that mean that if the Court were to affirm on either of the other patents, that your view is that this is not a necessary appeal, or that it's moot? No, I disagree, Your Honor, respectfully. The scope of our protection in the exclusion order is defined by the exclusion order. The exclusion order defines the products that can't be imported into the United States, based on what it decides to be infringing. So there would be an additional portion of the exclusion order that would indicate that this patent, if infringed, should be added on products that infringe the exclusion order. So your characterization of this as a protective appeal is actually not accurate. I think that's fair to say, Your Honor. We should have phrased it differently. The truth is, there's plenty of record evidence in the trial record that what Supreme is attempting to do is to design around some of the patents. These patents were created together as part of an intellectual property protection portfolio, and we believe that the 562 patent and what's claimed in it is an important part of that protection. Thank you. We'll restore your rebuttal for three minutes, and I have a feeling maybe even more, depending on how your colleagues do. Thank you. So, Mr. Gerdine, first person up, we're keeping track of your time. We're doing the block separately for each of you, so, you know, come on, get there. And please, of course, initially, well, however the court chooses to characterize this case, whether it's substantial evidence or a claim of obstruction, and obviously the Commission strongly believes that Veronica's claim of obstruction has been waived. Is there any challenge to that throughout their decision? Well, I must say, I reviewed the record, and I must say that I find Mr. Grant's argument very compelling when you look at what was filed, that it was really a claim, that they did preserve their rights. This is on your waiver point. Now, you have a separate point on whether or not what it's worth. Right. I mean, regardless of whether the court chooses a claim of obstruction or substantial evidence, still the point remains that the Commission adopted the patent's proposed instruction. In other words, even if it's de novo, we're just assuming that you win. Right, exactly. This is simply a case where the Commission adopted their proposed instruction for capture, clearly acquiring by the scanner for processing and storage, and now appellants are upset about the non-infringement finding by the Commission. Well, they say that the Commission did more than that, that the Commission also adopted the additional limitation that all of this has to occur before resort to the computer. Right. I think what the appellant is attempting to do is inflate pre-capture processing, which the patent is solely directed to, with post-capture processing. There's a thick, bright wall between those two. Here we have pre-capture processing, which is the only thing directed to by the patent. If you go to the background sections and to the summary sections, typically pages A316, column 2, it just talks about providing a method including steps of camera operation, scanning the object, processing, determining the print quality, then capturing. It's all pre-capture processing. That's solely what the patent is directed to. Well, if you look at claim 1, it includes a limitation scanning a biometric object to obtain a scanned image, and then the other claims, such as claim 4, recites capturing the scanned image to obtain a captured image. The spec says the latest scanned image is captured. It sounds to me like the patent seems to be equating capture with saving or keeping a previously scanned image. If I'm right about that, why should you prevail? Right. It's still very difficult with the acute scanner, too. The acute scanner scans the image, acquires it for processing and storage, forwards it onto a computer. As soon as it does that, it is done capture. It is done step F before it is in essence saved. Even if we construe capture to be keeping or saving? Right. Basically, it's a pre-forwarding versus post-forwarding. A capture has to be defined as you forward it to a computer for further processing and storage. That is not what the acute scanners do. According to the claim language, you have to do pre-capture processing before you even decide to forward it to a computer. Well, I think there may be some support for Cohen's argument. If you look in the specification, it clearly describes forwarding the captured image to a computer for further processing and storage. I look at a computer as the further process storage, but by then, the image, all the steps of Claim 1 have been completed. Right, but the acute scanner doesn't do any of the initial steps of DNA. It does not determine the print quality or detect the number of prints. It simply scans it and captures it and forwards it along to a computer for post-capture processing. That is not part of Claim 1's subject matter. Well, it determines the print quality of the individual prints, detects the prints of a scanned image, determines whether the scanned image is ready for capture. Right, the acute scanner doesn't do any of that. It simply scans, forwards it along to a computer, and completes a capture. It just basically jumps from steps A and B, jumps to step F or early after step F, and step F is ready for capture. It jumps to another step, captures, and forwards it along to a computer. It does not do any of the steps of DNA. I think the defendant's trying to completely pivot that wall between pre-capture or what's called pre-forwarding processing to after-forward or post-capture processing. That is not within the intrinsic record of the patent. What about column 6, starting at line 53, where it talks about controller functionality described above, and it seems to set a whole alternative, a computer coupled to the scanner, distributed between the scanner and the computer, or only by a scanner? Right, we're still talking about pre-capture processing. We're still talking about, yes, perhaps a computer can assist in control functionality for capture. It can assist with acquiring, again, it's acquired by the scanner for processing the source. So, yes, control functionality can be assisted by a computer, but, again, the physical step of capture has to be performed by a scanner, and once that's performed, we forward it along to a computer for processing storage, you have completed capture, and all the rest is post-capture or post-forwarding processing outside the scanner. How do we know that from the sentence that I'm referring to on column 6? Right, it says... I mean, it talks about control functionality. Right, control functionality described above, and described above, again, is all pre-capture processing, where you go through with the scanner and the camera, and then later on in the spec, it's archived, the pre-capture quality processing has to be done. Again, this is all referring to pre-capture processing, which, again, the commission adopts the proposed construction of a balance of capture has to be performed, acquired by a scanner for processing and storage. So, as soon as the accused product scans the image, acquires it by the scanner, forwards it along to a computer for processing and storage, it has completed capture, it's jumped from steps A and B to step F, and does not perform steps D and E between. So, what do you view as the scanner in the accused product? Is it the sensor? I'm sorry, the sensor? Yes. What do you view being the scanner? Right, it's the combination of the camera and the sensor to scan the image, and then forwards it along to a computer. As soon as it performs that step, pretty much simultaneously performs scanning the image and capturing, acquired by the scanner, and then forwards it along, it's completed capture. So, it's more than just the sensor? Are you talking about the accused product? Right, the accused product. Right, but it's all combined within the scanner. There's just steps of A, B, and then F. It doesn't perform any steps of D and E. So, it's performed just by the sensor, acquired by the scanner for processing and storage, acquires it, forwards it along, it's completed capture, and it's skipped steps. So, your point that because the print capture manager in the patent is part of the scanner, that that's how the functions of the earlier steps are done within the scanner, as opposed to the accused product? Right, exactly. The print capture manager, which doesn't appear in the plain language, it can't assist with the control functionality for capture. So, the physical step of capture has to be performed by the scanner in view of the proposed clinical structure that was Why don't we hear from Mr. Wu? Thank you. Good morning, may it please the Court. I am Darrell Wu, counsel for Intervenus, Prima, and Natalix. The 562 patent is about pre-capture quality and print determination. The patent meant was to do the quality determinations and print number determinations, and then capture. The purpose was to avoid having to do the capture again. The prior art was the inverse of that. The prior art was capture first, and then do the quality determinations. In the accused system, nothing is done before the capture. But if we limit ourselves, at least for the time being, to the claim language itself, nothing in the claim language gives us much assistance with respect to construing the term capture, whether it's your way or Mr. Grant's way, right? Well, actually, it does because it says that the quality determination has to be done based on the number of prints and the quality determination done in the step that precedes it. So, plenty of those steps have to be performed in order. And if you look at the rest of the patent where the claims are always talking about the scan and capturing the image and forwarding the captured image to the computer... Based on the other claims or the specifications? Specifications. It's consistent on that. And then claims four and eight also talk about that. Claims four and eight don't make any sense if the image is already captured by the computer. If the image capture happens by the computer, it already has the image. It doesn't then have to forward the image to itself as laid out in claims four and eight. And one makes no sense in a world that CrossMatch talks about where the computer somehow does the capture. But the patent teams argued for this precise sequencing of pre-capture determination in order to get the patent. They did so again on claim construction in the commission hearing below. And having avoided invalidity as a result of that because of the low 440 difference, they ought not be able to change it again on the appeal in order to capture, excuse the pun, capture the defendant's products on infringement. They've already gotten the benefit of the sequencing that they urged in the court below. They can't invert that now under the doctrines of invited error, under judicial estoppel. And I would also suggest that there is waivers. And I know Your Honor feels differently about that. But at every stage of the construction, CrossMatch said that the form of construction was correct and that the commission only misapplied the correct construction. They said that at the appendix 102-541. And they said it again at A-102-541. Well, they're still saying that. They're still saying that the construction itself is correct. They're saying that that next paragraph where the ALJ went on to say that this all has to happen before it goes to the computer. So it's really the construction doesn't include any reference to the sequencing. Actually, well, it does not by itself because capture is acquiring by the scanner. And then you plug that into the determination step where it says determining whether the scanned image is ready for capture. If you plug that in, it says or means determining whether the scanned image is ready for acquiring by the scanner. So that implies, it certainly implies if not strongly suggests and means that the scanned image determination has to happen before the acquisition by the scanner. Yes. So your argument is really not waiver, I think. It's that this isn't really a claim construction question, at least as to the portion of the claim that was construed. Well, that is actually true. Mr. Grant started his argument by pointing, Your Honors, to A-94 and 95. And he suggested that the ALJ imported uninserted claims into the construction. But if you read that, that's not what it says. He was just using that statement as further basis for agreeing with the construction that CrossMatch itself proposed. And CrossMatch always contended or at least conceded that the sequencing was a necessary aspect of the claim, right? That's correct. They always conceded that the sequencing was a necessary aspect because that's how they got the patent allowed in the first place. Because if you look at the low 440 reference, it did just the opposite. It did the capture first, then the quality determination. And now they're trying to move the capture downstream so that they can flip it back the other way and recapture what they already told us what was in the prior part. So either the construction that they proposed is wrong, which the new construction is wrong, or that the cabinet under the new construction where all this stuff happens way downstream is invalid under the low 440 reference. Now, let me just refer to the low 440 discussion in the prosecution history. What you're relying on, and it is a pretty pointed statement, but it is a statement of the examiner, is it not? Are you saying that that was a clear disavowal by CrossMatch even though it was simply a claim of the examiner? I'm not suggesting that it was a clear disavowal certainly by the patentee, but it's a clear indication of how this claim needs to be construed. If we construe it the way that CrossMatch keeps changing their positions on, then the sequencing becomes meaningless. And then there is no distinction over the low 440 because the prior, this is a... Yeah, but we're not, I mean, I guess I have some difficulty, at least after Philip. I mean, we don't construe patents to preserve their validity. So I appreciate your concern that it happens quite often that this is the case that we get, but if there's a validity problem with the claim construction, then that's for another day. And we can't, you know, we're not going to decide our case on that basis, right? I understand, but this is not a pure claim construction argument because they made the, CrossMatch made the construction advance it in the court below and got passed in validity challenge based on that, and now they shouldn't be able to flip it around and change it for inclusive purposes. So that's a different situation from pure claim construction, Your Honor, so I think we're in agreement on that. And in addition... So, Counsel, what would you say is our standard of review? Is it substantial evidence or de novo? I think it's substantial evidence, Your Honor, because all we're talking about is an application of the construction that they proposed to the facts. And there's alternative grounds for affirming, which is the fact that the court misconstrued the measure of acceptability as being completely unbounded to any notion of biometric identification. It's invalid as a result because it's The discussion that the court was having regarding prosecution is the 344 patent, and the 344 patent, it does teach a capture curve in a relatively rough way, but the specification between the 562 and the 344 are different. The 344 patent teaches a capture curve in  not related patents in the sense that they're divisionals, continuations, or CIPs. And this print capture management that we've been talking about, that's the core of the specifications disclosure that permits the computer to do this control functionality, that is what is missing from the 344. But that's part of the scanner in this patent, is it not? I mean, you say that repeatedly. I do, Your Honor. In fact, if you look at figures 3A, what it shows you is what functionality can occur before capture. So if you look at figure 3A, you see that whether the number of prints are of good quality and whether they are present. Those are the steps C, D, E, and F in Claim 1. Claim 1 doesn't require capture, and Column 8 teaches that those steps and that processing can occur. In fact, if you look at Column 6, specifically at lines 45 to 48, it says it references figures 3A as describing that. Very briefly, Your Honor, what the accused scanners do, I think it's a factual matter that was described as wrong, but it's not relevant to the issue before the court. The issue before the court is the appropriate construction. But you don't dispute that these steps have to be done in order, do you? I don't dispute that that sequence of steps occur, and that that sequence of steps occur before the image is decided on whether it's captured. And what we're conflating is what is an obtaining a scanned image from capturing an image. You can obtain a scanned image and then evaluate it for quality, number of prints. That control functionality is expressly taught that it can be on a general-purpose computer that's tethered to the scanner, and then based on that, the scanner makes a subsequent decision about whether to capture or not. That's the only way to read Claim 1 and Claim 4 so that they make sense. We have the argument. We thank both counsel, and we're about to see you again.